FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

DEC 16 2009

Stephan Harris, Clerk
Cheyenne

Gay George (WY Bar No. 6-3510)
Brand Law Office, PC
2614 Pioneer Ave., Suite 210
Cheyenne, WY 82001
307-635-2494
307-637-4788 (fax)
brandlawoffice2@aol.com

Sanjay Narayan (CA Bar No. 183227)
(*Pro Hac Vice Application Pending*)
Sierra Club Environmental Law Program
85 Second Street, Second Floor
San Francisco, CA 94105
415-977-5765
415-977-5793 (fax)
Sanjay.Narayan@sierraclub.org

Craig Holt Segall (CA Bar No. 260551)
(*Pro Hac Vice Application Pending*)
Sierra Club Environmental Law Program
408 C. St. SE
Washington, DC, 20002
202-548-4597
202-547-6009 (fax)
Craig.Segall@sierraclub.org

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| **Sierra Club,**<br>**Plaintiff,**<br><br>v.<br><br>**Basin Electric Power Cooperative,**<br>**Defendant.** | ) <br> ) <br> ) **CIVIL ACTION NO.** 09-CV-283-D <br> ) <br> ) <br> ) <br> ) <br> ) |

–1–

Receipt # 8221
Summons: ___ issued
         ___ not issued

## COMPLAINT

Plaintiff Sierra Club makes the following allegations upon knowledge as to itself and upon information and belief as to all other matters:

## INTRODUCTION

1) Sierra Club brings this citizen suit under section 304 of the Clean Air Act, 42 U.S.C. § 7604(a)(1), against Basin Electric Power Cooperative (Basin) for failing to obtain hazardous air pollutant emission limits for its coal-fired electric generating station, known as Dry Fork.

2) Basin began ongoing construction of the Dry Fork plant in October 2007 on a site roughly seven miles north of Gillette, a city of more than 20,000 people in Campbell County, Wyoming. Emissions from the plant will affect much of the surrounding region, including the Northern Cheyenne Indian Reservation, Wind Cave and Badlands National Parks, Thunder Basin National Grassland, and Devils Tower National Monument. Emissions may also reach the Powder River, which is among the last relatively undisturbed prairie rivers in the United States.

3) The Dry Fork power plant, once operational, will emit over 34 tons per year of 67 different hazardous air pollutants known to pose risks to human health, including mercury, arsenic, chromium, nickel, cadmium, dioxins, hydrogen fluoride, hydrogen chloride, formaldehyde, and cyanide.

4) These pollutants may have significant environmental and health effects, individually and cumulatively. Mercury, for instance, is "highly toxic, persistent, and bioaccumulates in the food chain." *Notice of Regulatory Finding*, 65 Fed. Reg. 79,825, 79,830 (Dec. 20, 2000). Mercury has fouled lakes and streams across the country. In December 2007, the Wyoming Department of Health warned that mercury had been found in fish caught in some Wyoming waters. The U.S. Environmental Protection

Agency (EPA) has found that electrical generating units like Dry Fork "are the largest domestic source of mercury emissions, and mercury in the environment presents significant hazards to public health and the environment." *Id.*

5) Other pollutants emitted by the Dry Fork plant, including arsenic, chromium, nickel, and cadmium, are "of potential concern for carcinogenic risk," according to EPA. *Id.* at 79,827. Dry Fork's over 25 tons per year of hydrochloric and hydrofluoric acid emissions also raise public health concerns. *See id.*

6) Because of these risks, coal-fired power plants are a listed source of hazardous air pollutants under the Clean Air Act and may not be constructed or operated unless the owner or operator has obtained and implemented "maximum achievable control technology" (MACT) emissions limitations. 42 U.S.C. § 7412. Basin's construction of Dry Fork, a major source of hazardous air pollutants, without MACT emissions limitations violates section 112(g)(2) of the Clean Air Act, 42 U.S.C. § 7412(g)(2), 40 C.F.R. § 63.43, and Wyoming Air Quality Standards and Regulations (WAQSR) Chapter 6, § 6(g), and threatens human health and the environment.

## JURISDICTION AND VENUE

7) This Court has subject matter jurisdiction over this action pursuant to the citizen suit provision of the Clean Air Act, 42 U.S.C. § 7604(a), and the federal question statute, 28 U.S.C. § 1331.

8) Venue is proper in this District pursuant to 42 U.S.C. § 7604(c)(1) and 28 U.S.C. §§ 1391(b) and (c) because the Dry Fork plant is located in Campbell County, Wyoming.

9) The Clean Air Act authorizes citizens to bring suit against any person who is alleged to have violated or to be in violation of an emission standard or limitation under the Act. 42 U.S.C. § 7604(a)(1).

10)   Sierra Club is a "person" within the meaning of the Act's citizen suit provision and is entitled to bring this action pursuant to 42 U.S.C. § 7604(a)(1).

11)   Basin is a "person" against whom a citizen suit can be brought pursuant to 42 U.S.C. § 7604(a)(1).

12)   District courts may "enforce . . . an emission standard or limitation . . . and . . . apply any appropriate civil penalties" against persons violating the Act. 42 U.S.C. § 7604(a).

13)   On May 6, 2008, Sierra Club sent a notice letter to Basin, EPA, and the Wyoming Department of Environmental Quality, describing the violations alleged herein and indicating its intent to sue Basin if they were not corrected. *See* 42 U.S.C. § 7604(b). Sierra Club also sent the same letter to all appropriate state and federal agencies.

14)   On September 19, 2009, Sierra Club updated this letter, restating its concerns and reiterating its intention to go to court if they were not addressed. It sent this letter to all appropriate parties.

15)   More than sixty (60) days have passed since notice was given and neither the U.S. Environmental Protection Agency (EPA) nor the State of Wyoming has commenced an action in court to redress the violations set forth in this Complaint.

16) Sierra Club is therefore free to bring this complaint.

## PARTIES

### Plaintiff

17)   Plaintiff Sierra Club brings this action on behalf of itself and its members. The Sierra Club was founded in 1892 and is the nation's oldest grass-roots environmental organization. The Sierra Club is a non-profit, membership organization incorporated in California, and has its headquarters in San Francisco, California. It has

approximately 1.3 million members and supporters nationwide, including over 1,000 members in Wyoming. The Sierra Club is dedicated to the protection and preservation of the natural and human environment in Wyoming. The Sierra Club's purpose is to explore, enjoy, and protect the wild places of the earth; to practice and promote the responsible use of the earth's ecosystems and resources; and to educate and enlist humanity to protect and restore the quality of the natural and human environments. The Sierra Club has members in Wyoming whose recreational, aesthetic, business and environmental interests have been, are being, and will be adversely affected by Basin's actions and inaction as set forth herein.

18) Basin's decision to construct the Dry Fork station without stringent MACT limits on the discharge of hazardous air pollutants, harms Sierra Club's interests. Sierra Club members will be injured by the hazardous air pollutants discharged by the Dry Fork plant. By definition, hazardous air pollutants are hazardous to human health – and thus Dry Fork's discharges of hazardous air pollutants in quantities greater than that which would be allowed through the application of MACT limits will be harmful to Sierra Club members. Increased levels of hazardous air pollutants in the air from Dry Fork will also adversely affect Sierra Club members by degrading air quality, by harming wildlife, vegetation, water quality, and real estate in areas they use, and by limiting their aesthetic enjoyment of these areas. The ongoing construction of Dry Fork without MACT limits also injures Sierra Club members by potentially foreclosing the installation of effective control technology. These injuries are fairly traceable to Basin's actions because Basin is the owner and operator of the plant. A court order directing Basin to obtain and comply with a case-by-case MACT determination and corresponding emission limits prior to constructing and operating Dry Fork, along with the other relief requested below, will redress the injuries Sierra Club members would otherwise suffer.

**Defendant**

19) Defendant Basin Electric Power Cooperative is a cooperative association organized under the laws of North Dakota for the purpose of generating and transmitting power. It is the owner and operator of the Dry Fork plant.

## LEGAL BACKGROUND
### The Clean Air Act and Wyoming Law

20) The Clean Air Act (Clean Air Act or Act) is designed to "protect and enhance the quality of the Nation's air resources so as to promote the public health and welfare and the productive capacity of its population." 42 U.S.C. § 7401(b)(1).

21) Hazardous air pollutants are regulated under Section 112 of the Clean Air Act, 42 U.S.C. § 7412. "Hazardous air pollutants" are those pollutants that "present, or may present, through inhalation or other routes of exposure, a threat of adverse human health effects (including, but not limited to, substances which are known to be, or may reasonably be anticipated to be, carcinogenic, mutagenic, teratogenic, neurotoxic, which cause reproductive dysfunction, or which are acutely or chronically toxic) or adverse environmental effects whether through ambient concentrations, bioaccumulation, deposition, or otherwise." 42 U.S.C. § 7412(b)(2).

22) Under Section 112 of the Clean Air Act, "no person may construct or reconstruct any major source of hazardous air pollutants, unless the Administrator (or the State) determines that the maximum achievable control technology emission limitation [(MACT)] under this section for new sources will be met. Such determination shall be made on a case-by-case basis where no applicable emission limitations have been established by the Administrator." 42 U.S.C. § 7412(g)(2)(B); *see also* 40 C.F.R. § 63.40(b) (providing that MACT rules apply to "any owner or operator who constructs or

reconstructs a major source of hazardous air pollutants after the effective date of section 112(g)(2)(B)").

23) A major source is any stationary source that has the potential to emit at least 10 tons per year of any hazardous air pollutant, or at least 25 tons per year of any combination of hazardous air pollutants. 42 U.S.C. § 7412(a)(1). Hazardous air pollutants are listed pursuant to section 112(b) of the Act, 42 U.S.C. § 7412(b).

24) The "MACT emission limitation and control technology" required to control these pollutants "shall achieve the maximum degree of reduction in emissions of [hazardous air pollutants] which can be achieved by utilizing those control technologies that can be identified . . . , taking into consideration the costs of achieving such emission reduction and any non-air quality health and environmental impacts and energy requirements associated with the emission reduction." 40 C.F.R. § 64.43(d)(2); see also WAQSR Chapter 6, § 6(f)(ix) (setting out Wyoming's compatible state definition of MACT).

25) "The MACT emission limitation . . . shall not be less stringent than the emission control which is achieved in practice by the best controlled similar source." 40 C.F.R. § 63.43(d)(1); see also WAQSR Chapter 6, §6(f)(ix) (adopting the same definition).

26) As part of the case-by-case determination required by the Act, when a MACT emission limitation has not been established for a class of sources, "[a]n application for a MACT determination . . . shall specify a control technology selected by the owner or operator that, if properly operated and maintained, will meet the MACT emission limitation or standard." 40 C.F.R. § 63.43(e)(1); see also WAQSR Chapter 6, §6(h) (discussing case-by-case MACT determinations).

27) "It is the EPA's view that the Act directly confers on the permitting authority the obligation to implement section 112(g) and to adopt a program which

conforms to the requirements of the [federal regulations]." *Hazardous Air Pollutants: Regulations Governing Constructed or Reconstructed Sources*, 61 Fed. Reg. 68,384, 68,397 (Dec. 27, 1996); *see also id.* at 68,390. Each state permitting authority is therefore required to review its preconstruction review procedures "for conformity to the requirements established" by federal regulations and to "adopt a program to implement section 112(g)." 40 C.F.R. § 63.42.

28) Federal regulations establish that, where an operating permit is not required prior to construction, state agencies must "ensure that no person may begin actual construction or reconstruction of a major source in that State or local jurisdiction unless the permitting authority determines that the MACT emission limitation for new sources will be met." 40 C.F.R. § 63.43(c)(2)(ii); *see also* 40 C.F.R. § 63.43(b) (requiring applicants to obtain a MACT determination); 40 C.F.R. § 63.42(c) (prohibiting construction without a MACT determination). The MACT review must "provide for public participation in the determination." *Id.*

29) In accordance with these federal requirements, Wyoming has established a MACT program. As part of this program, it has incorporated the EPA regulations in 40 C.F.R. Part 63 into its state regulations. *See* WAQSR, Chapter 5, § 3(a).

30) Wyoming requires that facilities submit MACT information with their preconstruction review permit applications. WAQSR, Chapter 6, § 2(a)(vi). Echoing the Clean Air Act, Wyoming law provides that, when no specific MACT emission limitation or standard has been promulgated, "no person may begin actual construction or reconstruction of a major source of [hazardous air pollutants] unless" he or she has obtained "a final and effective case-by-case determination . . . that emissions from the constructed or reconstructed major source will be controlled to a level no less stringent than the maximum achievable control technology emission limitation for new sources." WAQSR Chapter 6, § 6(g)(ii); *see also id.* § 6(f)(ix).

3`)   MACT determinations are stated in a Notice of MACT Approval. *See* 40 C.F.R. § 63.43(g); WAQSR Chapter 6, § 6(f)(x).

32) Alternately, under Wyoming law, a source may avoid MACT limits by applying for and receiving a valid "synthetic minor" permit, which contains emissions limits which would reduce its hazardous air pollutant emissions below the triggering threshold for MACT applicability. *See* WAQSR Chapter 6, § 3(m).

### Regulation of Electric Utility Steam Generating Units

33)   Pursuant to Clean Air Act Section 112(c), 42 U.S.C. § 7412(c), EPA periodically publishes a list of categories and subcategories of major sources and area sources that emit listed hazardous air pollutants. After completing a study on the emissions of electric utility steam generating units (EGUs), EPA listed EGUs as a source subject to Section 112. *Notice of Regulatory Finding,* 65 Fed. Reg. at 79,830-79,831.

34)   EGUs are defined in the Act as fossil-fuel-fired combustion units of more than 25 megawatts that serve a generator that produces electricity for sale. 42 U.S.C. § 7412(a)(8).

35)   EGUs, subject to Clean Air Act Section 112, are subject to an emissions limitation for each hazardous air pollutant these facilities emit.

36)   On March 29, 2005, EPA illegally purported to remove EGUs as sources subject to Clean Air Act Section 112. *Revision of December 2000 Regulatory Finding,* 70 Fed. Reg. 15,994 (Delisting Rule). The EPA's purported "delisting" of coal-fired power plants has been held unlawful and vacated; it was therefore void *ab initio*. *State of New Jersey v. U.S. Environmental Protection Agency,* 517 F.3d 574 (D.C. Cir. February 8, 2008) (vacating rules removing coal-fired plants from list of sources that must meet Section 112 requirements); *see also id.* at 583 (making clear that "EGUs remain listed under section 112, as we hold"); *Southern Alliance for Clean Energy v.*

*Duke Energy Carolinas, LLC*, slip op., 2008 WL 5110894, *2-*4, (W.D. N.C. Dec. 2, 2008).

37) On March 14, 2008, the D.C. Circuit Court of Appeals took the additional step of issuing an expedited mandate, vacating the Delisting Rule.

38) On January 7, 2009, the EPA sent a letter to its regional administrators making clear that, in light of the D.C. Circuit's ruling, "EGUs are legally obligated to come into compliance with the requirements of Section 112(g)."

39) On July 6, 2009, the Director of EPA's Office of Civil Enforcement sent a second letter making clear that noncompliant EGUs "must contact the appropriate permitting authority as expeditiously as possible to obtain a new source maximum achievable control technology (MACT) determination and a schedule for coming into compliance with the requirements of Section 112(g)."

## FACTS

40) Dry Fork will be a 385 megawatt fossil fuel fired boiler serving a generator that will produce electricity for sale.

41) Dry Fork therefore meets the definition of an EGU under Clean Air Act Section 112, 42 U.S.C. § 7412.

42) Dry Fork has the potential to emit a total of at least 34.8 tons per year of 67 different hazardous air pollutants, including more than ten tons each of two acidic gases, which are hazardous air pollutants.

43) The Wyoming Department of Environmental Quality detailed these emissions volumes are correct in its "Permit Application Analysis," which is the basis for Dry Fork's final air construction permit.

44) Dry Fork's final air construction permit explicitly allows it to emit 11.5 tons per year of hydrofluoric acid, which is a hazardous air pollutant.

45) Dry Fork is, in sum, a major source of hazardous air pollutants. *See* 42 U.S.C. § 7412(a)(1) (defining "major source" to include sources which have the potential to emit either ten tons per year of any one hazardous air pollutant or twenty-five tons per year of any combination of hazardous air pollutants).

46) Basin relied upon EPA's illegal Delisting Rule in its application for a construction permit for Dry Fork, which it filed with the Wyoming Department of Environmental Quality. Because of the Delisting Rule's purported exclusion of EGUs from MACT requirements, Basin did not provide MACT information for any hazardous air pollutant emitted by Dry Fork in its application, nor request a MACT determination.

47) Basin began construction of the Dry Fork plant on or about October 2007.

48) When Sierra Club informed Basin that its failure to obtain case-by-case MACT limits for each hazardous air pollutant emitted by Dry Fork violated the Clean Air Act and federal and state regulations, Basin indicated that it would nonetheless continue construction and did not intend to seek a MACT determination.

49) Sierra Club repeatedly attempted to resolve this dispute outside of court. Due in part to Sierra Club's efforts, and after considerable delay, Basin in April 2009 announced that it "intend[ed] to submit an application to modify" the current air construction permit for the Dry Fork plant. These modifications, according to Basin, would impose "synthetic minor" permit limits constraining Dry Fork's emissions to levels below the MACT thresholds. *Cf.* WAQSR Chapter 6, § 3(m).

50) When Basin submitted this announcement, along with a study, to the Wyoming Department of Environmental Quality, the Department informed Basin that it must receive a permit "prior to any work beginning on the facility."

51) Despite the Department's warning, and its own statements, Basin still has not submitted such a synthetic minor permit application.

52) Nor has Basin received a synthetic minor permit, or any other relevant modifications to its air construction permit.

53) Basin also still has not applied for a MACT determination for the Dry Fork plant.

54) Basin also has not obtained a MACT determination, or a Notice of MACT Approval, for the Dry Fork plant.

55) Construction continues at the Dry Fork plant site.

56) Without the issuance of injunctive relief and the assessment of civil penalties, Basin will continue to construct, and may ultimately operate, the Dry Fork plant without a MACT determination, Notice of MACT Approval, or permit containing MACT limits.

## CLAIM FOR RELIEF

**Failure to apply for or obtain a case-by-case MACT determination prior to commencing construction of a major source of hazardous air pollutants**

57) Sierra Club realleges and incorporates by reference paragraphs 1 through 56 above.

58) The obligation to obtain a maximum achievable emission limitation for hazardous air pollutants is an "emission standard or limitation" within the meaning of 42 U.S.C. § 7604(f)(1), (3) and (4).

59) According to 42 U.S.C. § 7412(g)(2)(B):

[N]o person may construct or reconstruct any major source of hazardous
air pollutants, unless the Administrator (or the State) determines that the
maximum achievable control technology emission limitation under this
section for new sources will be met. Such determinations shall be made
on a case-by-case basis where no applicable emission limitations have
been established by the Administrator.

60) Basin is the owner and operator of Dry Fork.

61) Basin is constructing Dry Fork within the meaning of 42 U.S.C. § 7412(g).

62) Dry Fork is an EGU, which is a listed source category of hazardous air pollutants under the Clean Air Act. 42 U.S.C. § 7412(a)(8); *Notice of Regulatory Finding*, 65 Fed. Reg. 79,825; *State of New Jersey*, 517 F.3d at 143.

63) Dry Fork, which has the potential to emit 34.8 tons of hazardous air pollutants per year, including more than ten tons each of two different hazardous air pollutants, is a major source of these pollutants. 42 U.S.C. § 7412(a)(1).

64) EPA has not established hazardous air pollutant MACT emission limits for EGUs. EGUs subject to MACT requirements must therefore apply for and receive case-by-case MACT determinations prior to beginning construction.

65) Basin has not applied for a case-by-case MACT determination for its Dry Fork plant.

66) Nor has Basin received a case-by-case MACT determination for its Dry Fork plant.

67) Basin began constructing Dry Fork on or about October 2007.

68) Basin is now unlawfully constructing the Dry Fork plant without case-by-case hazardous air pollutant MACT emission limits in violation of the Clean Air Act, 42 U.S.C. § 7412(g), and of 40 C.F.R. § 63.43, and WAQSR Chapter 6, §6(g). *See Southern Alliance for Clean Energy*, 2008 WL 5110894, *9 ("Defendant is continuing with the construction of [an EGU] without the required § 112 MACT determination. . . .[Defendant] is simply refusing to comply with controlling law").

69) Each day that Basin continues construction of the Dry Fork plant without a MACT determination is a new violation of the Clean Air Act and its federal and state implementing regulations.

## PRAYER FOR RELIEF

Wherefore, Sierra Club requests that the Court grant the following preliminary and permanent relief:

70) Issue preliminary and permanent injunctions preventing any further construction of the Dry Fork plant until Basin obtains and complies with MACT emissions limits for each hazardous air pollutant the plant has the potential to emit.

71) Issue a declaratory judgment that Basin's construction of Dry Fork is illegal under section 112 of the Clean Air Act, 42 U.S.C. § 7412, 40 C.F.R. § 63.43, and WAQSR Chapter 6, §6(g).

72) Impose appropriate civil penalties for each day following the issuance of EPA's January 7, 2009, letter that Basin constructed Dry Fork without a valid MACT determination.

73) Issue an order requiring Basin to pay Sierra Club's reasonable costs of litigation, including attorney and expert witness fees.

74) Issue an order requiring all other relief that the Court deems just and proper.

Dated this 16th day of December, 2009.

Respectfully submitted,

*Gay George*

Gay George (WY Bar No. 6-3510)
Brand Law Office, PC
2614 Pioneer Ave., Suite 210
Cheyenne, WY, 82001
307-635-2494
307-637-4788(fax)
email: brandlawoffice2@aol.com

Sanjay Narayan (CA Bar No. 183227)
(*Pro Hac Vice Application Pending*)
Sierra Club Environmental Law Program
85 Second Street, Second Floor
San Francisco, CA 94105
415-977-5765
415-977-5793 (fax)
Sanjay.Narayan@sierraclub.org

Craig Holt Segall (CA Bar No. 260551)
(*Pro Hac Vice Application Pending*)
Sierra Club Environmental Law Program
408 C. St. SE
Washington, DC, 20002
202-548-4597
202-547-6009 (fax)
Craig.Segall@sierraclub.org

Attorneys for Sierra Club

## CERTIFICATE OF SERVICE

I hereby certify that on this 16th day of December 2009, a true and correct copy of the foregoing Complaint was served by First Class U.S. Mail postage prepaid and addressed to:

Denise W. Kennedy, P.C.
Holland and Hart, LLP
555 Seventeenth St., Suite 3200
Denver, CO, 80202-3979
dkennedy@hollandhart.com

Basin Electric Power Cooperative
Registered Agent
C T Corporation System
1720 Carey Ave.
Cheyenne, WY, 82001

Attorney General Eric Holder
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001

Ronald R. Harper, CEO
Basin Electric Power Cooperative
1717 East Interstate Ave.
Bismarck, ND, 58503-0564

Administrator Lisa Jackson
Environmental Protection Agency
Ariel Rios Building
1200 Pennsylvania Avenue, N.W.
Washington, DC 20460


*Guy George*
Of: Brand Law Office